IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LEEANN RENEE ELKINS,           )
                               )
            Plaintiff,         )
                               )
v.                             )   Case No. CIV-09-143-KEW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

**OPINION AND ORDER**

Plaintiff Leeann Elkins (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on May 20, 1987 and was 21 years old at the time of the ALJ's decision. She completed her education through the tenth grade, taking special education classes. Claimant has engaged in no past relevant work. Claimant alleges an inability to work beginning May 1, 2005 due to bipolar disorder, PTSD, anxiety

disorder, and a learning disability.

## Procedural History

On June 3, 2005, Claimant protectively filed applications for child's insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits were denied initially and upon reconsideration. On October 15, 2008, Claimant appeared at a hearing before ALJ Peter J. Caras in Urbana, Illinois. By decision dated November 14, 2008, the ALJ found Claimant was not disabled at any time through the date of the decision. On February 9, 2009, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform work at all exertional levels with some limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to find Claimant's impairments met a listing; (2) failing to include all of Claimant's impairments in his determination; (3) engaging in a faulty credibility analysis; (4) making an improper RFC determination; and (5) finding Claimant could perform the jobs identified by the vocational expert who testified in this case.

**Meeting a Listing**

Claimant contends the ALJ should have determined that she suffered from severe impairments that met a listing. Claimant specifically asserts she met the requirements of the listings for 12.02 (Organic Mental Disorder), 12.04 (Affective Disorder), 12.06 (Anxiety Disorder), and 12.09 (Substance Abuse). In order to meet a listing, Claimant must demonstrate she meets or equals all of the specified medical criteria of the particular Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; See, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. Andrade v. Sec. of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir.

1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show she satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.02, 12.04, 12.06, and 12.09. The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments.

On September 12, 2005, Claimant underwent a psychological evaluation by Dr. Douglas A. Brown. On the WAIS-III testing, Claimant functioned in the low-average range of intelligence with FSIQ of 87, VIQ of 73, and PIQ of 107. Dr. Brown considered the considerable difference between Claimant's verbal and non-verbal ability to be highly significant and indicative of a very strong deficit in verbal capacity. Claimant performed best in the areas of abstact spatial relationships, visual attentiveness and acuity,

speed and accuracy of visuo-motor processing, and understanding sequences and consequences of social behaviors. Claimant's most prominent weaknesses include common sense problem solving skills and general word knowledge. All verbal capacities were considered weak.

Index scoring shows a verbal comprehension index of 76, which is 31 points lower than the perceptual organization index of 107. Claimant's working memory index was also low at 75. This score is strongly suggestive of significant problems with attention and concentration. (Tr. 485-86).

On November 14, 2005, Claimant was also evaluated by Dr. Sally Varghese. Dr. Varghese found Claimant had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 499).

Dr. Varghese noted that the consultative examiner diagnosed "Specific Developmental Disorder involving reading, written expression, and arithmetic. He labels it as 'severe.' She does have a severe mental impairment, but it does not approach the level of severity required by the medical listings." (Tr. 501).

Dr. Varghese also completed a Mental Residual Functional

Capacity Assessment form on Claimant dated November 14, 2005. She found marked limitations in Claimant's ability to understand and remember detailed instructions and ability to carry out detailed instructions. (Tr. 502). Dr. Varghese further found Claimant can understand, carry our, and remember simple one or two step instructions, can respond appropriately to supervisors, co-workers, and the general public. Claimant was also found to be able to deal with work-related decisions and changes in a routine work setting. She could make simple work-related decisions and judgments that are commensurate with the functions of unskilled work. (Tr. 504).

On August 22, 2006, interrogatories were submitted to Dr. Paula Monroe. Dr. Monroe diagnosed Claimant with a major depressive disorder and anxiety disorder with a history of PTSD. She evaluated Claimant under Listing 12.04 and 12.06 and found Claimant did not individually meet the requirements for either listing. Dr. Monroe also opined that the impairments considered either singly or in combination did not equal a listing. (Tr. 547). Dr. Monroe stated she was unable to determine with from the limited treatment notes provided whether Claimant's impairments imposed any restrictions on her ability to perform. (Tr. 548).

In his decision, the ALJ found in light of the medical evidence that Claimant's mental impairments, either singly or in

combination, did not meet listings 12.02, 12.04, 12.06, or 12.09. (Tr. 18). He found Claimant did not meet the "paragraph B" criteria.

This Court finds the ALJ thoroughly reviewed the evidence in this case and his decision that Claimant failed to demonstrate two of the marked limitations in functioning required by the listing is well-supported by substantial evidence contained in the medical record. As a result, the ALJ's conclusions that Claimant did not meet a listing is not erroneous.

### Inclusion of Physical Impairments

Claimant next contends the ALJ should have determined Claimant suffered from severe physical impairments, apparently involving her lower extremities which affects her gait. In November of 2005, Claimant was involved in a motor vehicle accident. Claimant sustained a concussion and a broken hip which was treated surgically. (Tr. 18). The ALJ determined Claimant has physical health problems which entail no more than a slight abnormality, which would not have more than a minimal effect on her ability to work. Id.

On April 10, 2006, Claimant underwent a Physical Residual Functional Capacity Assessment by Dr. Shafeek Sanbar. Dr. Sanbar found Claimant could stand and/or walk with normal breaks for a

total of about 6 hours in an 8 hour workday. He found a November 24, 2005 x-ray of Claimant's hip "showed post fixation greater trochanteric fracture appearing to be in anotomic alignment. Pt. does report some problems with personal care. She prepares simple meals and washes dishes. Current ICE showed gait was slow with slight limp on the right with good safety. She could walk on heels and tiptoes some difficulty on the right. No neuro deficits were noted. ROM of the right hip was slightly restricted. It is felt that the patient would have this RFC 12 months from her November 18, 2005 injury." (Tr. 478).

On March 29, 2006, Claimant was referred to Dr. Wojciech L. Dulowski for a consultative physical examination. He noted a history of pain in the right hip and right leg. Claimant stated she could not walk and has continual pain. On examination, Dr. Dulowski found that Claimant walked with a slight limp to the right side but had good safety stability. Claimant walked on heels and tiptoes with some difficulty on the right side. In his assessment, Dr. Dulowski determined Claimant suffered from right hip pain, status post open reduction, internal fixation for anterior dislocation of the right hip. (Tr. 540). On range of motion, Dr. Dulowski found a right external rotation of 45 out of 50 degrees. (Tr. 541).

10

"The severity regulation requires the claimant to show that [s]he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'" Bowen v. Yuckert, 482 U.S. 137, 146 (1987); 20 C.F.R. §§ 404.1520(c), 404.1521(b). Claimant has failed in this evidentiary burden. The medical evidence concerning Claimant's hip and leg condition does not rise to the level of demonstrating it impairs Claimant's ability to perform at the work level established by the ALJ.

### Credibility Determination

Claimant challenges the ALJ's finding that her claims of severe impairment are not entirely credible. The ALJ recites the medical record in his decision which directly contradicts Claimant's subjective claims of disability. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ has met his obligation to tie his credibility findings to the medical record. This Court finds no error in his analysis or

conclusion.

### RFC Determination

Claimant essentially restates his arguments concerning the ALJ's findings as to Claimant's mental and physical impairments. This Court finds no error in the ALJ's decision in this regard.

### Vocational Expert Questioning

Claimant contends the questioning of the vocational expert did not contain all of Claimant's limitations because the ALJ's RFC determination is flawed. The ALJ's hypothetical questioning of the vocational expert contained the same limitations as stated in his RFC determination. (Tr. 610). The vocational expert testified that jobs existed in sufficient numbers for a packer, assembly worker, inspection worker, food preparer, and hotel housekeeper. (Tr. 610-11). The ALJ relief upon this testimony to support his denial at step five. (Tr. 24). Since this Court has found no deficiencies in the ALJ's RFC evaluation and the questioning of the vocational expert corresponds with the RFC limitations, this Court finds no error in either the questions posed by the ALJ or the findings of the vocational expert.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 29th day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE